[No. C068476. Third Dist. Sept. 13, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
DEANDRE DESHAWN LYNCH, Defendant and Appellant.

COUNSEL

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RAYE, P. J.**—This case addresses whether the 2011 realignment legislation addressing public safety (hereafter Realignment Act; Stats. 2011, ch. 15) must be applied retroactively to all defendants whose convictions are not yet final. We find that a defendant's right to equal protection of the law does not prevent the Legislature's limiting the act's application to felons sentenced on or after its operational date of October 1, 2011.

## BACKGROUND

We dispense with a recitation of the facts of the crimes as they are unnecessary to resolve this appeal.

Defendant Deandre Deshawn Lynch pleaded no contest to possession of methamphetamine with a prior narcotics conviction (Health & Saf. Code, §§ 11378, 11370.2, subd. (c)) in case No. 101550 and failure to appear (Pen. Code, § 1320, subd. (b)) in case No. 101776.[1] On June 7, 2011, he was sentenced to a stipulated term of four years four months in state prison.

## DISCUSSION

### I

The Realignment Act significantly changes felony punishment. Under prior law, felonies were offenses punished by death or imprisonment in state prison. (§ 17, former subd. (a).) The Realignment Act changes the definition of a felony to an offense punishable by death, imprisonment in state prison, or by "imprisonment in a county jail under the provisions of subdivision (h) of Section 1170." (§ 17, subd. (a).) The newly added section 1170, subdivision (h) provides that felonies punished pursuant to this subdivision are generally punished by confinement to county jail for the term prescribed for the underlying offense. (§ 1170, subd. (h)(1), (2).) Courts may suspend execution of "a concluding portion" of the county jail term and place the defendant under the "mandatory supervision" of the county probation department. (§ 1170, subd. (h)(5)(B)(i).) Defendants sentenced to county jail are not subject to parole, which extends only to defendants who have served prison terms. (See § 3000 et seq.) The only felons punished under this subdivision who are subject to state prison sentences are those with a current or prior serious or violent felony conviction, or who are required to register as a sex offender, or who are subject to the section 186.11 aggravated white-collar crime enhancement. (§ 1170, subd. (h)(3).)

Defendant's contention concerns the Realignment Act's savings clause, which limits application of the new sentencing scheme to defendants sentenced on or after October 1, 2011.[2] Defendant is not subject to the sex registration law, does not have a current or prior conviction for a serious or violent felony, and is not subject to the aggravated white-collar crime enhancement. But for the date he was sentenced, June 7, 2011, he would receive the benefits of the Realignment Act. Defendant argues that the prospective application of the Realignment Act violates his right to equal protection of the law.

---

[1] Undesignated statutory references are to the Penal Code.

[2] "The sentencing changes made by the act that added this subdivision shall be applied prospectively to any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).)

"The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion. [Citations.]" (*People v. Leng* (1999) 71 Cal.App.4th 1, 11 [83 Cal.Rptr.2d 433].) We first ask whether the two classes are similarly situated with respect to the purpose of the law in question, but are treated differently. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) If groups are similarly situated but treated differently, the state must then provide a rational justification for the disparity. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200–1201 [39 Cal.Rptr.3d 821, 129 P.3d 29].) However, a law that interferes with a fundamental constitutional right or involves a suspect classification, such as race or national origin, is subject to strict scrutiny requiring a compelling state interest. (*San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 17 [36 L.Ed.2d 16, 33, 93 S.Ct. 1278].)

Relying on *People v. Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92] (*Saffell*), defendant contends his liberty interest in the Realignment Act cannot be subject to discrimination based on the date of his sentencing. Finding no compelling or even any rational interest justifying prospective application of the law, he asks us to vacate his sentence and remand for resentencing under the Realignment Act.

*Saffell* addressed an equal protection challenge to the Mentally Disordered Sex Offenders Act (Welf. & Inst. Code, former § 6300 et seq.). (*Saffell, supra*, 25 Cal.3d at pp. 225–226.) A defendant found to be a mentally disordered sex offender (MDSO) and amenable to treatment was committed to treatment for the upper term for his offense and could not earn credits for good behavior. (*Id.* at p. 226.) The defendant argued that depriving him of good behavior credits and the possibility of a lesser term violated his equal protection rights. (*Id.* at p. 228.)

The Supreme Court began its analysis by noting "that the most basic personal liberty interest is involved. While the degrees of restraint for an MDSO may vary considerably, from confinement in state hospital [citation] to outpatient care [citation], there is in any case a very considerable limitation on that freedom of action enjoyed by all other citizens." (*Saffell, supra*, 25 Cal.3d at p. 228.) Since personal liberty is a fundamental interest protected under the state and federal Constitutions, the Supreme Court applied the compelling state interest test to the MDSO law. (25 Cal.3d at p. 228.) Finding a compelling state interest in treating MDSO's, the Supreme Court upheld the law. (*Id.* at p. 229.)

Defendant's reliance on *Saffell* is misplaced. *Saffell* did not address the prospective application of a statute reducing the punishment for crimes. It

involved a very different and more restrictive scheme that increased time in confinement for a distinct subset of criminal defendants. Where, as here, the question involves the possible retroactive application of a more beneficial sentencing scheme, defendant has no fundamental liberty interest at stake.

The right to equal protection of the law generally does not prevent the state from setting a starting point for a change in the law. "[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 563, 31 S.Ct. 490].) The same rule applies to changes in sentencing law that benefit defendants. "Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim—including this court. [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 188 [1 Cal.Rptr.3d 885, 72 P.3d 820] (*Floyd*).)

Defendant attempts to distinguish the statement from *Floyd* because it addresses the effective rather than the operative date of a statute.[3] The Realignment Act was an urgency measure that took effect the day it was signed, April 4, 2011. (Stats. 2011, ch. 15, § 639.) As relevant here, it became operational on October 1, 2011, when it was first applied to criminal defendants. Defendant argues that since the statement in *Floyd* addresses the effective date of the statute, it and other cases reaching similar results are inapplicable to his argument, which addresses the Realignment Act's operative date.

Defendant's argument rests on a distinction without a difference. The legislation upheld in *Floyd*, Proposition 36, had the same operative and effective date. (*Floyd, supra,* 31 Cal.4th at pp. 183–184.) Even though Proposition 36 substantially reduced the punishment for many nonviolent drug offenders, the Supreme Court in *Floyd* held that the prospective application of Proposition 36 did not violate the equal protection rights of defendants sentenced before that day. (*Floyd,* at pp. 182, 191.) The distinction between operative and effective dates was irrelevant to the Supreme Court's analysis. To suggest that *Floyd* or any of the numerous cases reaching a similar result turn on the distinction between effective and operative dates is specious.

---

[3] " 'The effective date [of a statute] is . . . the date upon which the statute came into being as an existing law.' [Citation.] '[T]he operative date is the date upon which the directives of the statute may be actually implemented.' [Citation.]" (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

The liberty interest identified and protected in *Saffell* does not justify a different approach. In *Baker v. Superior Court* (1984) 35 Cal.3d 663 [200 Cal.Rptr. 293, 677 P.2d 219] (*Baker*), the Supreme Court addressed whether the repeal of the MDSO law prevented the extension of previously imposed MDSO commitments. (*Id.* at p. 665.) The petitioners in *Baker* argued that continued extension of their MDSO commitments violated equal protection rights because sex offenders convicted after the repeal were not subject to the law's indefinite and possibly lifelong civil commitment. (*Id.* at p. 668.) The Supreme Court rejected the claim out of hand. "No significant constitutional problem is presented by the prospective repeal of the MDSO laws. 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment.' [Citation.] '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.' [Citations.]" (*Baker*, at pp. 668–669.)

■ Equal protection places some limits on the prospective application of changes in the law that benefit criminal defendants. Thus a change in the law granting credit for presentence custody to those felons transferred to prison after a certain date (former § 2900.5, added by Stats. 1971, ch. 1732, § 2, p. 3686) could not be applied prospectively without violating equal protection. (*In re Kapperman* (1974) 11 Cal.3d 542, 544, 550 [114 Cal.Rptr. 97, 522 P.2d 657] (*Kapperman*).) In so ruling, the Supreme Court did not find a fundamental liberty interest implicated by the denial of custody credits. Instead, the *Kapperman* court found that prospective application of former section 2900.5 was not supported by "a rational and legitimate state interest." (*Kapperman*, at pp. 546, 550.)

■ The Supreme Court's "decision in *Kapperman* does not stand for the broad proposition that equal protection principles require that all persons who commit the same offense receive the same punishment or treatment without regard to the date of their misconduct." (*Baker, supra*, 35 Cal.3d at p. 669.) The *Kapperman* court took pains to point out its decision did not apply to laws reducing punishment for crimes. "Initially, we point out that this case is not governed by cases [citation] involving the application to previously convicted offenders of statutes lessening the *punishment* for a particular offense. The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written. [Citation.]" (*Kapperman, supra*, 11 Cal.3d at p. 546.) Therefore, *Kapperman* does not prevent the prospective application of a statute reducing punishment for a crime. (See *Floyd, supra*, 31 Cal.4th at pp. 189–190; see also *People v. Brown* (2012) 54 Cal.4th 314, 330 [142 Cal.Rptr.3d 824, 278 P.3d 1182].)

■ Since prospective application of the Realignment Act does not affect a fundamental liberty interest and does not involve a suspect classification, it

need only be reasonably related to a rational state interest. That interest, preserving the criminal law's deterrent effect, was identified in *Kapperman* and reiterated by the Supreme Court in *Floyd*. (See *Floyd, supra*, 31 Cal.4th at p. 188.) This clearly applies to the Realignment Act, which reduces punishment for most felons.[4]

■    There is an additional justification for prospective application. "The Legislature may experiment individually with various therapeutic programs related to criminal charges or convictions. (Cf. *Baker, supra*, 35 Cal.3d at pp. 669–670.) The equal protection issue is whether actual distinctions in the statutory classes realistically justify disparities in treatment under the appropriate standard of review." (*In re Huffman* (1986) 42 Cal.3d 552, 561 [229 Cal.Rptr. 789, 724 P.2d 475].) Thus, "Equal protection considerations will not preclude the legislative branch from prescribing experimental programs. [Citations.]" (*McGlothlen v. Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005, 1021 [140 Cal.Rptr. 168].)

Prospective application allows the Legislature to control the risk of new legislation by limiting its application. If the Legislature subsequently determines the benefits of the legislation outweigh the costs, then it may extend the benefits of the legislation retroactively. Requiring the Legislature to apply retroactively any change in the law benefitting criminal defendants imposes unnecessary additional burdens to the already difficult task of fashioning a criminal justice system that protects the public and rehabilitates criminals.

■    The Realignment Act is, if nothing else, a significant experiment by the Legislature. Prospective application is reasonably related to the Legislature's rational interests in limiting the potential costs of its experiment. Nothing prevents the Legislature from extending the Realignment Act to all criminal defendants if it later determines that policy to be worthwhile.

Defendant argues that prospective application of the Realignment Act advances no rational interest because it does not advance any of the act's stated goals. The Legislature's stated purpose for the Realignment Act, codified in section 17.5, is to reduce crime and use resources more efficiently by moving less dangerous felons from prison to local supervision.[5] According

---

[4] While the Realignment Act does not reduce the term for any felony, it nonetheless reduces the punishment for the affected crimes. Defendants sentenced under the Realignment Act are not subject to parole and may serve part of their sentences in less restrictive community release. (§ 1170, subd. (h)(5)(B).)

[5] Section 17.5, subdivision (a) provides, in pertinent part:

"(1) The Legislature reaffirms its commitment to reducing recidivism among criminal offenders.

to defendant, since these purposes are advanced by applying the act retroactively, prospective application advances no legitimate state interest.

■ Defendant identifies no decision requiring the Legislature to identify every possible reason supporting a classification. Statutes that do not involve fundamental rights or suspect classification are presumptively valid. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440 [87 L.Ed.2d 313, 320, 105 S.Ct. 3249].) "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." (*McGowan v. Maryland* (1961) 366 U.S. 420, 426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) The Legislature does not have to state any purpose for legislation, and it is unfair and unreasonable to expect it to anticipate every possible argument against an enactment.

■ Since the prospective application of the Realignment Act does not affect a fundamental right, is not based on a suspect classification, and advances a rational state interest, it does not violate defendant's right to equal protection of the law.[6]

---

"(2) Despite the dramatic increase in corrections spending over the past two decades, national reincarceration rates for people released from prison remain unchanged or have worsened. National data show that about 40 percent of released individuals are reincarcerated within three years. In California, the recidivism rate for persons who have served time in prison is even greater than the national average.

"(3) Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in improved public safety.

"(4) California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system.

"(5) Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society.

"(6) Community-based corrections programs require a partnership between local public safety entities and the county to provide and expand the use of community-based punishment for low-level offender populations. Each county's Local Community Corrections Partnership, as established in paragraph (2) of subdivision (b) of Section 1230, should play a critical role in developing programs and ensuring appropriate outcomes for low-level offenders.

"(7) Fiscal policy and correctional practices should align to promote a justice reinvestment strategy that fits each county. 'Justice reinvestment' is a data-driven approach to reduce corrections and related criminal justice spending and reinvest savings in strategies designed to increase public safety. The purpose of justice reinvestment is to manage and allocate criminal justice populations more cost-effectively, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable." (Stats. 2011, ch. 15, § 229.)

[6] Defendant contends in his reply brief that it is uncertain whether the Legislature intended to prevent defendants sentenced before the operational date from receiving the benefits of the

## II

Defendant pleaded no contest to his offenses. He contends the minute orders show he pleaded guilty. We disagree. Our reading of the minutes finds the letters "NC" circled rather than "G."

## DISPOSITION

The judgment is affirmed.

Murray, J., and Duarte, J., concurred.

A petition for a rehearing was denied October 11, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 19, 2012, S206197.

---

Realignment Act. He asks us to apply the rule of lenity and find as a matter of statutory interpretation that the Realignment Act applies to felons sentenced before its operational date. This argument was not raised in the opening brief and is therefore forfeited. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29 [101 Cal.Rptr.2d 835]; *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 807–808 [241 P.2d 639].) It is also without merit. The rule of lenity applies when a penal statute is susceptible of two reasonable interpretations, and then " ' "only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule." ' [Citation.] In other words, 'the rule of lenity is a tie-breaking principle, of relevance when " 'two reasonable interpretations of the same provision stand in relative equipoise . . . .' " ' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 889 [138 Cal.Rptr.3d 16, 270 P.3d 711].) It would be difficult for the Legislature to draft a more explicit statement that the legislation is to be applied prospectively only.