Filed 4/2/13  P. v. Moore CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENNETH MOORE,<br><br>    Defendant and Appellant. | B236605<br><br>(Los Angeles County<br>Super. Ct. No. BA360190) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Higa, Judge.  Affirmed as modified.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On October 4, 2011, the trial court found defendant Kenneth Moore in violation of probation. On October 5, 2011, the trial court ordered executed an eight-year prison sentence that had previously been imposed and suspended.

Defendant appeals on the grounds that: (1) the trial court erred in not sentencing him under Penal Code section 1170, subdivision (h);[1] and (2) the restitution fine and parole revocation fine imposed on October 5, 2011, must be stricken because the court had previously imposed these fines. Also, because defendant is not subject to parole under section 3451, both parole revocation fines must be stricken.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 12, 2010, defendant Kenneth Moore pleaded "no contest" to one count of selling cocaine in violation of Health and Safety Code section 11352, subdivision (a). He admitted having suffered three prior prison terms within the meaning of section 667.5, subdivision (b).

The trial court sentenced defendant to eight years in state prison. The sentence consisted of five years in count 1, plus three consecutive one-year terms for the three section 667.5, subdivision (b) enhancements. The trial court suspended execution of sentence and placed defendant on probation for a period of five years.

Defendant was charged with the June 17, 2011 theft of several items from a Target store. The trial court summarily revoked his probation on July 25, 2011. After a contested revocation hearing, the trial court found defendant to be in violation of probation, and defendant's probation remained revoked.[2] The trial court ordered that the previously suspended sentence of eight years be in full force and effect.

Defense counsel argued that the trial court was required to sentence defendant to county jail under the recently amended section 1170, subdivision (h). The prosecutor contended that this section did not apply because defendant had already been sentenced

---

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

[2]    The People subsequently moved to dismiss the theft case that resulted in revocation of probation.

2

when placed on probation, and the trial court agreed.  The trial court sentenced defendant to prison for eight years and imposed a restitution fine of $250 and a parole revocation fine of $250, which it stayed.

## DISCUSSION

### I.  Application of Amended Section 1170, Subdivision (h)

#### A.  *Argument*

Defendant contends that the trial court should have sentenced him to county jail under section 1170, subdivision (h), since, at the time of his October 5, 2011 sentencing, the offenses he committed were punishable by imprisonment pursuant to section 1170, subdivision (h).  Defendant did not fall under any of the exceptions that would have required his sentence to be served in state prison.  (§ 1170, subd. (h)(3).)  Although an eight-year prison term was imposed with a stay of execution on January 12, 2010, the trial court's actions at the October 5, 2011 hearing constituted a sentencing within the meaning of section 1170, subdivision (h)(6).

#### B.  *Relevant Authority*

"The Realignment Act 'enacted sweeping changes to long-standing sentencing laws,' including replacing prison commitments with county jail commitments for certain felonies and eligible defendants.  Section 1170, subdivision (h)(6) specifies the Act will be effective for all persons sentenced on or after October 1, 2011."  (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1004, fn. omitted.)  Section 1170, subdivision (h)(2) provides that "a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense."  Health and Safety Code section 11352, subdivision (a) provides that those who violate that statute "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years."

#### C.  *No Abuse of Discretion*

In *People v. Gipson* (Feb. 28, 2013, B241551) ___ Cal.App.4th  ___ [2013 Cal.App. LEXIS 152] (*Gipson*), this court noted that Division Eight of our district had held that, for purposes of the Realignment Act, a defendant is sentenced on the date that a

3

trial court orders execution of a previously imposed but suspended sentence. (*Gipson*, at p. ___ [at pp. *1-*2]; see *People v. Clytus*, *supra*, 209 Cal.App.4th at pp. 1004, 1009.) We disagreed with *Clytus*, holding that "a defendant is sentenced on the date that sentence is first announced and imposed even if execution of the sentence does not happen until a later date." (*Gipson*, at p. ___ [at p. *2].)

We observed in *Gipson* that section 1170, subdivision (h)(6) clearly applies the Realignment Act to "'any person sentenced on or after October 1, 2011,'" without qualification. We concluded that the sentencing referred to in this provision plainly meant the occasion when the trial court first announced and imposed the sentence as opposed to the occasion when the sentence was executed. (*Gipson*, *supra*, ___ Cal.App.4th at p. ___ [at p. *9].) We declined to force additional meaning into the word "sentenced" with the result that "sentenced" in reality would mean that the sentence was both imposed and executed. (*Ibid.*)

We relied on *People v. Chagolla* (1984) 151 Cal.App.3d 1045 for the principle that a trial court is without jurisdiction to modify or change the final judgment, and it is a final judgment that occurs when a sentence is imposed and its execution suspended. (*Gipson*, *supra*, ___ Cal.App.4th at p. ___ [at pp. *10-*11]*; People v. Chagolla* at p. 1049.) In the instant case, as in *Gipson*, we conclude that the trial court had jurisdiction only to order the execution of the previously imposed prison sentence. (*Gipson*, *supra*, ___ Cal.App.4th at p. ___ [at p. *11].) Accordingly, defendant was sentenced on January 12, 2010, and his sentence to state prison does not violate the Realignment Act.

Defendant argues alternatively that federal and state equal protection principles require that he be sentenced pursuant to section 1170, subdivision (h). He maintains that excluding felons whose sentences were imposed and stayed before October 1, 2011, but ordered to be in full force and effect after that date, treats that individual differently from individuals whose sentences were both imposed and executed after October 1, 2011, for no reason related to the purpose of section 1170, subdivision (h). Because the purpose of the Realignment Act is to improve public safety by realigning low-level offenders into a system that facilitates their re-entry into society, there is no rational basis for the

4

disparate treatment.  Defendant asserts that he is precisely the type of person that the realignment policies intended to help reintegrate into society, with the end result of increased public safety.

We reject defendant's equal protection argument and agree with the court in *People v. Lynch* (2012) 209 Cal.App.4th 353 (*Lynch*), which stated that, "[t]he right to equal protection of the law generally does not prevent the state from setting a starting point for a change in the law.  '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.'  [Citation.]  The same rule applies to changes in sentencing law that benefit defendants."  (*Id*. at p. 359.)

*Lynch* cited *In re Kapperman* (1974) 11 Cal.3d 542, 546 (*Kapperman*), for the proposition that the Legislature "'properly may specify that [punishment-reducing] statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.'"  (*Lynch*, *supra*, 209 Cal.App.4th at p. 360; see also *People v. Brown* (2012) 54 Cal.4th 314, 328-330 [no equal protection violation in prospective application of former § 4019, granting increased conduct credits]; *People v. Floyd* (2003) 31 Cal.4th 179, 188-191 (*Floyd*) [no equal protection violation in prospective application of Proposition 36, the Substance Abuse and Crime Prevention Act of 2000].)  The *Lynch* court went on to note that, "[s]ince prospective application of the Realignment Act does not affect a fundamental liberty interest and does not involve a suspect classification, it need only be reasonably related to a rational state interest.  That interest, preserving the criminal law's deterrent effect, was identified in *Kapperman* and reiterated by the Supreme Court in *Floyd*."  (*Lynch*, *supra*, at pp. 360-361.)

*Lynch* observed that there is an additional justification for prospective application, i.e., that "[t]he Legislature may experiment individually with various therapeutic programs related to criminal charges or convictions," and prospective application permits the Legislature to control the risk of these experiments.  (*Lynch*, *supra*, 209 Cal.App.4th at p. 361.)  "The Realignment Act is, if nothing else, a significant experiment by the

5

Legislature." (*Ibid*.)  The Legislature has a rational interest in limiting the potential costs of the experiment, and prospective application is reasonably related to this goal.  If the experiment results in a worthwhile policy, the Legislature may then extend the Realignment Act to all criminal defendants.  (*Ibid*.)

Finally, like defendant here, the defendant in *Lynch* asserted that prospective application did not further the stated purpose of the legislation.  (*Lynch*, *supra*, 209 Cal.App.4th at pp. 361-362.)  As stated in *Lynch*, the Legislature need not identify every possible reason in support of a classification, and statutes that do not involve fundamental rights or suspect classifications are presumed to be valid.  (*Id.* at p. 362.)  Defendant's arguments are without merit.

## II.  Fines

### A.  Defendant's Argument

Defendant contends that the $250 fines imposed on October 5, 2011, must be stricken, since the court had already imposed a $200 restitution fine and a $200 parole revocation fine on January 12, 2010.  He next argues that both parole revocation fines must be stricken because he is no longer eligible for parole, but rather is subject to community supervision under section 3451.

### B.  Additional Fines Must Be Stricken

Section 1202.4, subdivision (b) requires the trial court to impose a separate and additional restitution fine in every case where a person is convicted of a crime, unless there are extraordinary reasons for not doing so.  (§ 1202.4, subd. (b).)  However, "a trial court has no statutory authority to order a second restitution fine upon revocation of probation."  (*People v. Arata* (2004) 118 Cal.App.4th 195, 201-202; see *People v. Chambers* (1998) 65 Cal.App.4th 819, 821-823 [trial court exceeded its statutory authority when imposing a second restitution fine, which must be stricken].)  A restitution fine, imposed as a condition of probation, "survives the probationary term." (*Arata*, at p. 201.)  The failure to object to the imposition of a second restitution fine does not forfeit appellate review.  (*Chambers*, at p. 823.)  Accordingly, the $250 restitution fine imposed on October 5, 2011, must be stricken.

6

At the time of defendant's 2010 sentencing, section 1202.45 provided that the sentencing court had to impose a parole revocation restitution fine in addition to the section 1202.4, subdivision (b) restitution fine in every case where a person was convicted of a crime and the sentence included a period of parole. (Stats. 2007, ch. 302, § 15.) Both fines were to be in the same amount. Defendant's sentence included a period of parole of three years. As we have discussed, the original restitution fine in the amount of $200 remained in effect following the revocation of defendant's probation. Accordingly, any additional fine under section 1202.45 cannot exceed $200. Because we have concluded that defendant's sentencing occurred in 2010, a parole revocation restitution fine of $200 was properly imposed.

Section 3451 forms part of the Postrelease Community Supervision Act of 2011, which was part of the Realignment Legislation. (§ 3450; Stats. 2011, ch. 15, §§ 1, 479.) Section 3451 provides: "Notwithstanding any other law and except for persons serving a prison term for any crime described in subdivision (b), all persons released from prison on and after October 1, 2011, or, whose sentence has been deemed served pursuant to Section 2900.5 after serving a prison term for a felony shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision . . . ." (§ 3451, subd. (a).) Under this statute, it appears that when defendant is released from prison, he will be subject to community supervision, since none of the exceptions in subdivision (b) apply to him.

Section 1202.45, subdivision (b), currently provides: "In every case where a person is convicted of a crime and is subject to . . . postrelease community supervision under Section 3451 . . . the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional postrelease community supervision revocation restitution fine . . . in the same amount as that imposed pursuant to subdivision (b) of section 1202.4, that may be collected by the agency designated pursuant to subdivision (b) of Section 2085.5 by the board of supervisors of the county in which the prisoner is incarcerated." Parole revocation restitution fines and postrelease community supervision fines are suspended unless the person's parole or postrelease

7

community supervision is revoked.  (§ 1202.45, subd. (c).)  Therefore, even if the trial court that executed defendant's suspended sentence should have altered the judgment to label the second fine as a postrelease community supervision fine, the fine would have been in the same amount as the parole revocation restitution fine, and defendant suffered no prejudice.  Given that any such fine is suspended until such time as defendant's postrelease supervision is revoked, which may never occur, and given that the provisions of the Realignment Act constitute a significant experiment (*Lynch*, *supra*, 209 Cal.App.4th at p. 361), we do not consider a remand for resentencing on that point to be a prudent use of judicial resources.

## DISPOSITION

The $250 restitution fine (§ 1202.4, subd. (b)) and the $250 parole revocation restitution fine (§ 1202.45) imposed on October 5, 2011, are stricken.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

8