Filed 3/20/14  P. v. Price CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C071078 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF112736) |
| v. | |
| ALEXANDER LLOYD PRICE, | |
| Defendant and Appellant. | |

A jury convicted defendant Alexander Lloyd Price of battery with infliction of serious bodily injury (count 1; Pen. Code, § 243, subd. (d)[1]).[2]  The jury also found defendant had committed three serious felonies that were also strikes (§§ 667, subds. (a), (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).[3]

---

[1] Undesignated section references are to the Penal Code.

[2] The jury did not reach a verdict on count 2, misdemeanor battery (§ 242), charged as a lesser included offense of count 1.  The trial court dismissed count 2 at sentencing.

[3] The first conviction pleaded as a strike and a serious felony was assault with a deadly weapon (§ 245, subd. (a)(1)) involving the personal infliction of great bodily harm (§ 12022.7), alleged in the information as "on May 27, 1992."  The second strike was

1

After denying defendant's motions to reduce the present offense to a misdemeanor (§ 17) and to strike one or more strikes (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)), the trial court sentenced defendant to a state prison term of 25 years to life, plus five years apiece for two of the serious felony enhancements (the third was stayed) and one year for the prior prison term enhancement, all to run consecutively.

Defendant contends the trial court erred by denying his motion to strike strikes.  In a supplemental brief, he contends he is entitled to automatic resentencing in light of the voters' approval of Proposition 36 (the Three Strikes Reform Act of 2012, codified as § 1170.126)  and the principles established in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  We reject both contentions and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant struck Wesley Ford in the face without provocation, then kicked him twice in the face, causing a broken jaw that required surgery.  The jury evidently rejected defendant's testimony that he acted in self-defense.

**Defendant's Presentencing Request to Dismiss Strikes**

Defendant asserted:

All of his strikes stemmed from two separate cases.  The June 3, 1992, offenses "arguably stem from the same course of conduct."  All were over 20 years old and occurred when defendant was 19 years old.  All occurred before the enactment of the "three strikes" law.  Defendant's only other felony conviction, the basis for the prior prison term enhancement, was a nonviolent drug offense (Health & Saf. Code, § 11377,

---

also assault with a deadly weapon, alleged in the information as "on June 3, 1992."  The third strike was battery with infliction of serious bodily injury (§§ 242/243, subd. (d)), alleged in the information as "on June 3, 1992."  All convictions occurred in Santa Clara County.  The prior prison term was pleaded as arising out of a conviction on October 31, 2001, in Santa Clara County.

subd. (a)) committed on October 31, 2001, for which defendant was sentenced to prison in February 2004.

The current offense began with an argument over defendant's treatment of his girlfriend. The victim erroneously perceived that defendant had pushed the girlfriend's head into the steering wheel of her car.[4] Defendant (who had been drinking) and the victim "had words." What was said between them was "still a contested matter." Defendant got out of his girlfriend's car and struck the victim once in the face; any other blows were deflected or did not cause injury. When the victim said he did not want to fight, defendant stopped immediately. He was arrested without incident.

Defendant had "a terrible childhood," having been placed in foster care because his father beat him. During the six years defendant spent in prison for the crimes now charged as strikes, he received his GED and obtained a forklift certification. After his release, he started his own business, obtained a place to live, and was working when he developed a hernia requiring surgery. At that point, he began to abuse alcohol and methamphetamine and was arrested for "minor offenses," not serious or violent crimes.

Defendant attached to his *Romero* motion a "Social Work Assessment," prepared by a social worker intern. The "assessment," based on interviews with defendant and his family and a review of records from the Santa Clara County Department of Family and Children's Services, supported the characterization of defendant's childhood and early adulthood contained in the motion. It described defendant's demeanor in the interviews as "forthright, open and honest" and his recollection as "almost always on point with the records obtained." It noted defendant's opinion that "the court paperwork provided is falsified" and the intern's opinion that defendant's aberrant behavior was "linked with the lack of mental health services and trauma he has faced throughout his life." It also noted

---

[4] At trial the girlfriend testified that defendant did not push her head into the steering wheel but also testified that he was the aggressor in the ensuing incident.

his concern that his three sons would suffer because of the disruptions in his life. Characterizing defendant's admitted history of substance abuse as "a form of self medication," the assessment recommended "a limited amount of time in prison" followed by "long-term drug rehabilitation and therapeutic intervention[.]"

**The People's Opposition**

In response to defendant's request, the People asserted:

Defendant's unprovoked attack on the victim caused a fractured jaw that was wired closed for six weeks. When arrested, defendant was belligerent and gave false names to the officers. The officers discovered defendant was a parolee at large at the time of the incident.

Defendant's prior convictions for assault with a deadly weapon stemmed from incidents that occurred on June 17, 1991, and February 6, 1992. The second incident also gave rise to his conviction for battery with serious bodily injury.

In the first incident, defendant and several others were beating a man. When another person stopped to assist the victim, defendant hit the second person from behind, leaving him lying unconscious in the street.

In the second incident, when police officers came to a party in response to a noise call, defendant and his brother became destructive. Asked to leave, defendant and his brothers punched one victim and prevented the other from assisting him. One victim was struck with a five-pound weight; when he tried to crawl away, defendant and another brother beat him with a wooden pole. He was unconscious for seven and a half hours and received 22 stitches.

Defendant's adult criminal record began in 1990 with a misdemeanor violation of Vehicle Code section 20002 (hit and run with property damage). In October 1991 he was convicted of resisting or obstructing a law enforcement officer and giving false information to a law enforcement officer in August 1991. (Pen. Code, §§ 148, 148.9.) On October 6, 1991, he committed assault with a deadly weapon, personally inflicting

4

great bodily injury; he was granted probation with a year in county jail. On February 6, 1992, he committed assault with a deadly weapon; he was again sentenced to a year in county jail and probation. In 1994 he violated probation and was sentenced to nine years in state prison for his prior offenses. In October 1998 he spent 210 days in county jail for possession of stolen property. In June 2000 he was convicted of driving under the influence (Veh. Code, § 23152) and driving without a valid license (Veh. Code, § 12500). In April 2001 he was arrested for unlawfully possessing a controlled substance (Health & Saf. Code, § 11377); he was convicted in October 2001 for that offense and his prior strikes. Granted probation, he violated it twice and was imprisoned for 25 years to life in January 2004. That sentence was reversed in January 2006, and defendant was again granted probation. In February 2006 he violated probation and was sentenced to 16 months in state prison. He violated parole in January 2007, November 2008, and August 2009. He had pending charges in Santa Clara County for allegedly breaking into the home of another family member along with his brother, beating the victim, and stealing property from him.

Defendant's conduct in the current offense resembled his conduct in his first strike offense: in both cases, defendant attacked someone who was trying to come to the aid of defendant's apparent victim. All of defendant's strikes were crimes of violence, and the second strike involved the use of a weapon.

Not only did defendant commit crimes every time he was out of custody, but even the reversal of a prior three strikes sentence had made no impression on him: after that stroke of luck, he violated parole three times.

Defendant's account of his current offense misstated the evidence and minimized his culpability.

Defendant's self-serving "social work assessment" should not be given credibility. In his interviews with probation, he did not claim to be suffering from substance abuse.

5

Given defendant's history, character, and prospects, and the violent nature of his current offense, to dismiss even one strike was unwarranted.

**Defendant's Reply**

Defendant asserted that relief under section 1385 was warranted based on his "untreated mental health issues." In addition, he alleged various legal grounds to strike strikes.

Defendant pointed to psychological and developmental problems beginning in early childhood, including his mother's alcohol consumption during her pregnancy, his own drinking of lighter fluid at age three, physical and emotional abuse by his father, special education classes throughout his schooling, two years in foster care, and diagnosed but untreated attention deficit hyperactivity disorder (ADHD). He noted the trial court that sentenced him to prison on the strike offenses had initially ordered him to participate in psychological counseling as a condition of probation.

Defendant attached a "psychiatric evaluation and report" by Captane P. Thomson, M.D., based on a two-hour interview with defendant in custody on March 30, 2012. Dr. Thomson observed that a 41-year sentence "seems to [defendant] excessive for an assault which he describes as provoked," then recounted defendant's version of the current offense.

Dr. Thomson stated that defendant's prior convictions consisted of serving six years in prison "for fighting in 1991" and four years "for possession of methamphetamine in 2003." Dr. Thomson also recited defendant's prior history, apparently based solely on defendant's account.

Dr. Thomson opined that defendant suffered from borderline mental retardation and dyslexia. Dr. Thomson also endorsed the recommendations of the "social worker evaluation," which he called "wonderfully thorough and thoughtful."

As to the prior strikes, defendant asserted that two of them either arose from the same act on February 6, 1992, or were so closely associated that *Romero* would justify

6

striking one; moreover, the record did not justify the allegation that he personally inflicted great bodily injury on February 6, 1992. He also asserted that a prior trial court had stricken the strikes in 2001 because they were already old then and recommended that this court give "substantial deference" to the prior court's finding.

Defendant also reargued the facts of his current offense at great length.

Last, defendant urged the trial court to consider that his alleged strikes were committed prior to enactment of the three strikes law. He asserted that it appeared he had pleaded to one of the 1992 offenses (an amended charge of assault with a deadly weapon that did not include an enhancement for personally inflicting great bodily), not realizing it could later be deemed a strike, because that charge, without the enhancement, was not defined as a serious felony at the time.

**The Trial Court's Ruling**

In a ruling that is remarkably thorough and clear, the trial court denied defendant's *Romero* motion, as follows:

"The Court may grant Section 1385 relief only if doing so would further the interest of justice. In determining whether striking a prior is appropriate, the Court must consider the rights of the defendant and those of the People.

"In striking a prior, the Court is concluding that an exception to the three strikes scheme should be made because the defendant should be treated as though he actually fell outside the scheme.

"As I said, I have read all the documents in this case. I've actually spent a number of hours reviewing these motions, and all of the papers that relate to them. I have considered the nature and circumstances of the defendant's prior offense [*sic*], his . . . present offense, his prior convictions, his background, character of [*sic*] prospects.

"In the present case, the defendant was convicted of battery with serious bodily injury. He argues because of his life experiences, he was in a hypervigilant state. He believed that the victim was high on methamphetamine. The victim had wrongly accused

7

him of hurting his pregnant girlfriend, and he acted in order to protect his child and girlfriend.

"He testified at trial saying that the victim came at him, and he only hit the victim one time in self-defense. This was contrary to the testimony of his girlfriend and the victim.

"At the defendant's request, the jury was instructed on self-defense and the defense of others. The jury did not believe him, and I believe the jury reached the correct verdicts.

"In an unprovoked attack, the defendant broke the victim's jaw requiring it to be wired close[d] for six weeks. I find nothing about the present offense that weighs in favor of granting the defendant's motion.

"He has suffered a number of prior convictions. In 1990 at age 18 he was convicted of a misdemeanor [V]ehicle [C]ode violation; in 1991 he was convicted of two misdemeanors, resisting a peace officer and giving false identification; in May 1992, he was convicted of Penal Code Section 245(a)(1) with great bodily injury; in June 1992, he was convicted of Penal Code Section 245(a)(1) and battery of [*sic*] serious bodily injury; in 1994, his probation was revoked in the felony cases, and he was sentenced to Department of Corrections for six years; in 1998, he was convicted of misdemeanor receiving stolen property; in 1999, he was convicted of three misdemeanors, including driving under the influence; in 2001, he was convicted of felony drug possession, placed on probation, and that probation was revoked, and he was sentenced to 16 months in prison; in 2002, he was convicted of misdemeanor [V]ehicle [C]ode violation; in 2007, he violated his parole; in 2008, he violated his parole again; in 2009, he was convicted of misdemeanor fighting; in 2009, he violated his parole yet again; in 2011, he committed the present offense; and in 2011, the San Jose Police Department placed a hold on him for kidnapping, witness intimidation, battery with serious bodily injury, burglary and assault with a deadly weapon.

8

"The People have summarized the fact[s] of the strike priors, and the defense has not disputed those facts.  Like the present case, both priors were attacks that resulted in significant injury to the victim.  Although they occurred almost 20 years ago, they're not remote given the defendant's ongoing criminal conduct.

"The defendant[] notes that another Court struck the strike priors as being too remote, and states that this Court must give substantial deference to that finding.  The Court can decline to do so.

"First, this Court is not required to give deference to another superior court's findings, and, more importantly, we don't know what information that Court had in front of it at the time it made its findings.  There's nothing about the defendant's past criminal record that weighs in favor of granting his motions.

"The defendant claims the Court should grant his motions based on his untreated mental health issues. . . .

"He noted that his mother consumed alcohol during her pregnancy.  He drank lighter fluid as a young child resulting in hospitalization.  He experienced developmental delays, suffered from ADHD, and was in special education classes.  He was physically and emotionally abused by his father.  He spent two years in foster care, and he was ordered by the Court that sent him to prison in 1994 to participate in psychological counseling as part of his probation.

"He submitted a social work assessment . . . that was prepared by a social worker intern in the public defender's office.  It stated conclusions without support, such as that his convictions for resisting an officer and a strike conviction[] were the result of, quote, teenage fights influenced by alcohol and psychological and emotional impairment.  And later after losing his job, he began drinking and was exposed to methamphetamine.  And, quote, without proper medication to treat his depression, anxiety and ADHD, his life began to spiral as he relied more heavily on methamphetamine.

9

"Dr. Thomson has commented on that assessment. I still am unable to give credible weight to the assessment. As I indicated before, I don't doubt that [defendant] may have been developmentally delayed, suffered from ADHD, and may have suffered from parental abuse, had emotional problems and might have benefitted from psychological counseling, but there's nothing to indicate that he's mentally ill or that he suffered from a mental condition that significantly reduced his culpability for the current offenses or his prior offenses.

"Since that hearing, the defendant has submitted a report and letter from Dr. Captane Thomson, who is a well-recognized psychiatrist. It is notable that Dr. Thomson sets forth the defendant's personal history and facts of the present offense as related to him by the defendant. We have no way of knowing whether or not that history is accurate, but the facts of the present offense as related by Dr. Thomson are contrary to the evidence that the jury believed and that was the evidence at trial. And as I noted, I think the jury reached the correct verdict.

"Dr. Thomson's report concludes that the defendant suffers from borderline mental retardation and dyslexia. And I have some difficulty with that assessment, particularly in light of the quite articulate, perhaps even eloquent, comments made by [defendant] as he was just speaking on these motions.

"Dr. Thomson's letter indicates that the defendant has been previously diagnosed suffering from bipolar disorder, and he concludes that with drugs to control this disorder, quote, life imprisonment to prevent the risk for occasional assaultive episode[s] would seem an unnecessarily expensive intervention, end quote.

"The factors that this Court must consider are far broader than the factors Dr. Thomson considered. And while defendant's mental conditions are regrettable, they do not rise to the level of significantly reducing his culpability for the current offense or his prior offenses.

"The defendant contends that the Court must consider whether the defendant's strike priors were incurred prior to the enactment of the Three Strikes Law. It is an important fact to consider, and I have considered it, but I don't share in the defendant's speculation as to why he pled guilty, and the defendant has failed to establish an equal protection violation.

"The defendant contends his strike prior for battery with serious bodily injury must be dismissed because the record doesn't support the presumption that the defendant personally inflicted great bodily injury. He cites cases hold[ing] that under Penal Code Section 1192.7(c)(8), a serious felony requires a finding that the defendant personally inflicted great bodily injury or personally used a firearm. And he says the record doesn't support the finding that he personally inflicted great bodily injury, but Court Exhibit 3, which is the unredacted version of People's 6, which went to the jury from the trial, shows Count 3, battery upon Ron Carroll with SBI, with a further allegation that the defendant personally inflicted great bodily injury on Ron Carroll. And the defendant pled guilty to Count 3 and admitted the special allegation under Count 3.

"The defendant contends two of the strike priors arose out of the same act, and so one of them should be dismissed.

"This argument relates to his June 1992 convictions for Penal Code Section 245(a)(1) and battery with serious bodily injury.

"These convictions did arise out of a single incident, but apparently contrary to the defendant's claim, they didn't arise out of a single . . . act. According to the People's representation, there were two victims in this case which resulted in charges against the defendant and his brother. This is supported by Court Exhibit 3, which was offered at trial. The defendant was convicted of two offenses against the same victim, Ron Carroll. But Court Exhibit 3 further shows that neither sentence was stayed pursuant to Penal Code Section 654, and that supports the assumption, contrary to the defendant's position,

11

that the convictions arose out of multiple acts. I have, as requested by the defendant, considered the closeness of the two acts.

"To the extent that I have information, I have considered defendant's background, character and prospects. I have read the social study and the reports and letter filed by Dr. Thomson. I have considered the fact that the defendant earned his GED in prison, that he started his own business, and that he has had a long-term significant partner with whom he has two children. But in spite of this, he has continued his criminal behavior.

"Taking all the facts into consideration, I don't believe striking [defendant]'s prior convictions would be in the interest of justice, and I deny his Section 1385 request. And for the same reasons, I deny his request to reduce his conviction to a misdemeanor."

## DISCUSSION

### I

Defendant contends the trial court abused its discretion by denying his *Romero* request. We disagree.

We review a trial court's decision not to strike a strike for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) A court abuses its discretion only if its decision is "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) If the court is unaware of its discretion or if it uses impermissible factors in refusing to strike a strike, reversal for abuse of discretion is justified. (*Id.* at p. 378.) But the court may properly strike a strike only if it finds that the defendant is outside the spirit of the three strikes law, which would be a truly extraordinary finding where the defendant is a career criminal, as here. (*Ibid.; People v. Williams* (1998) 17 Cal.4th 148, 161.)

Here, defendant has a practically unbroken record of criminality dating back 20 years—that is, his entire adult life. His performance on probation and parole has been execrable. He is currently facing yet more charges alleging the kind of violent assaultive conduct for which he was convicted in this case and has been repeatedly convicted of in the past. Not even the gift of having a prior three-strikes sentence set aside and replaced

12

by a grant of probation could inspire him to change his ways. As the trial court found, defendant is not outside the spirit of the three strikes law.

Defendant does not contend that the trial court was unaware of its discretion to strike strikes, nor does he contend that the court used impermissible factors to justify not doing so. He argues only that the court should have given more weight to the factors he cited in his *Romero* motion, viewing them in the light most favorable to himself. Thus, he continues to minimize the gravity of his present and past offenses, while ignoring the court's contrary findings; he continues to cite the social worker intern's assessment and the psychiatrist's evaluation, which the court discounted for reasons clearly stated on the record; and he continues to stress his positive work history and family life, which the court acknowledged while pointing out that they had not kept him from regularly reoffending. Defendant's argument does not show that the court abused its discretion by denying his motion to strike strikes.

## II

In his supplemental brief, defendant contends this court should vacate his three strikes sentence and remand his case to the trial court for resentencing pursuant to "ameliorative" amendments to sections 667 and 1170.12 of the three strikes law enacted by the people in Proposition 36 while his appeal was pending. Defendant relies on *Estrada*, *supra*, 63 Cal.2d 740 for the proposition that when legislation provides more lenient treatment than its antecedent law and contains no saving clause, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty . . . should apply to every case to which it constitutionally could apply." (*Id*. at p. 745.) Defendant argues the amendments apply to him and others whose convictions were not yet final on the effective date of the statute.

We disagree for the reasons expressed in *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*). According to *Yearwood*, section 1170.126, added by

the proposition, is the equivalent of a "saving clause" and defeats the presumption of retroactivity set forth in *Estrada*. (*Yearwood*, at pp. 172, 176.)

Section 1170.126, as noted, applies to "persons presently serving" a three strikes sentence of 25 years to life (§ 1170.126, subd. (a)); under it, such a person "may file [in the trial court] a petition for a recall of sentence" to request resentencing under Proposition 36 (§ 1170.126, subd. (b)); and, if the person is eligible under Proposition 36, the trial court will resentence the person "unless the court, in its discretion, determines that resentencing the [person] would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f); see *id*. at subds. (e), (g)). Consequently, a person already sentenced and serving a 25-years-to-life sentence under the three strikes law, like defendant here, must petition the trial court under section 1170.126 for a recall of sentence regardless of whether his or her judgment is final. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 168.)

Defendant also contends that retroactive application of Proposition 36 is compelled by equal protection. We reject that contention as well. "Prisoners are not a suspect class. The status of being incarcerated is neither an immutable characteristic nor an invidious basis of classification." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 178.) Laws applicable to prisoners require only a rational basis. (*Ibid*.) To the extent Proposition 36 applies prospectively, prospective application of a statute that lessens punishment does not violate equal protection. (*People v. Floyd* (2003) 31 Cal.4th 179, 188-189; *People v. Lynch* (2012) 209 Cal.App.4th 353, 360-361.)

## DISPOSITION

The judgment is affirmed.

                                                                                                            RAYE           , P. J.

We concur:

      NICHOLSON      , J.

      ROBIE         , J.