Filed 2/4/16 (second of two modifications; first modification and unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E061292 |
| v. | (Super.Ct.No. CR57387) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| LEONARD JOSEPH RANGEL, | |
| Real Party in Interest. | |

The opinion filed in this matter on January 12, 2016, is modified as follows:

In addition to the modifications set out in our order modifying opinion dated February 2, 2016, please make the following changes:

On page seven, delete footnote nine. This change will necessitate renumbering the remaining footnotes.

1

Except for these modifications, the opinion remains unchanged. The modifications do not affect a change in the judgment.

CERTIFIED FOR PUBLICATION

McKINSTER_____
J.

We concur:


HOLLENHORST_____
Acting P. J.


MILLER_____
J.

Filed 2/2/16 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>RIVERSIDE COUNTY,<br><br>    Respondent;<br><br>LEONARD JOSEPH RANGEL,<br><br>    Real Party in Interest. | E061292<br><br>(Super.Ct.No. CR57387)<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING<br>[NO CHANGE IN JUDGMENT] |

The petition for rehearing is denied. The opinion filed in this matter on January 12, 2016, is modified as follows:

Page seven, line four; delete the second sentence beginning with "The People summarize" through the end of the paragraph.

Page seven, line nine; bring line nine (the first line of the second full paragraph beginning with "In our view") up to become line two of the first full paragraph.

1

Page nine, line five; delete the first full sentence of the paragraph and replace it with "It is true that in some respects parole is more onerous than community supervision, as a parolee may be returned to state prison and there is a possibility that parole may far exceed three years."

Page nine, line 10; replace the word "the" following "Thus," with "any."

Except for these modifications, the opinion remains unchanged.  The modifications do not affect a change in the judgment.

CERTIFIED FOR PUBLICATION

McKINSTER
J.

We concur:


HOLLENHORST
Acting P. J.


MILLER
J.

2

Filed 1/12/16 (unmodified version)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E061292 |
| v. | (Super.Ct.No. CR57387) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| LEONARD JOSEPH RANGEL, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of prohibition/mandate. Edward D. Webster, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) The petition is denied.

Paul E. Zellerbach, District Attorney, Michael A. Hestrin, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Steven L. Harmon, Public Defender, and William A. Meronek, Deputy Public Defender, for Real Party in Interest.

In this petition for extraordinary relief the People challenge an order of the superior court declining to place real party in interest Leonard Joseph Rangel on "community supervision" (Pen. Code, § 3451,[1] subd. (a))[2] following his release from prison. We agree with the trial court's decision and will deny the petition.

STATEMENT OF FACTS

In 1996, real party in interest (Rangel) was convicted of felon in possession (former § 12021, subd. (a)(1)) and two misdemeanors. As a "third striker" (former § 667, subds. (b) & (e)), he received an indeterminate sentence of 25 years to life.

In 2012 the electorate, by initiative measure (Proposition 36), amended section 667 so that many of those defendants who have two prior strikes but whose *current* conviction is not for a "serious and/or violent felony" are subject only to a doubled base term sentence (§ 667, subd. (e)(1)) rather than the minimum 25-to-life terms reserved for more serious current violators. (§ 667, subd. (e)(2)(A)(ii).) At the same time, the electorate added section 1170.126 as a mechanism by which inmates sentenced as "third strikers" under the old law could seek to be resentenced under the new provisions, if they would

---

[1] All subsequent statutory references are to the Penal Code.

[2] Real party in interest filed a Request for Judicial Notice with this court on June 10, 2015. We hereby grant said request.

2

have been subject only to the lesser term had they been sentenced under the new law and met specified other requirements.

In November 2012 Rangel filed such a request, which the court granted on April 9, 2014. Rangel was resentenced to the upper term of three years for the weapons offense, doubled to six years, plus three additional prior prison term enhancements (§ 667.5, subd. (b)) for a total of nine years.

This order is not in dispute.[3] Due to the nature of his current conviction, Rangel would normally have been subject upon release to a period of "community supervision" under section 3451, part of the "Postrelease Community Supervision Act of 2011" (the Act). That statute provides that except for more serious offenders, as described, inmates released from prison on or after October 1, 2011, are subject to a new program of community supervision for a period not to exceed three years. (§ 3451, subd. (a).) Serious offenders remain subject to the existing system of parole governed by sections 3000 *ff.* The trial court here offered Rangel the choice of whether to participate in the community supervision program, but Rangel declined.[4]

---

[3] The court's records do not reflect that any notice of appeal was filed from the order.

[4] The trial court explained to Rangel the benefits of supervision, including the possibility of referrals to counseling and substance abuse assistance as well as job finding help. It also pointed out that if Rangel did not comply with the conditions of supervision, he could be returned to custody. Rangel declined.

The trial court's remarks reflected its belief that having served over 18 years in custody, Rangel had in essence completed both his new term *and* any period of postconviction supervision to which he might otherwise be subject. Section 2900.5, subdivision (a), provides generally that all periods of time spent in confinement by a convicted defendant are to be "credited upon his or her term of imprisonment." "Term of imprisonment" is then defined to include "any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge . . . ." Hence, if an inmate accrues excess credits stemming from actual confinement, the excess is applied to reduce the maximum statutory period of parole. (See *In re Ballard* (1981) 115 Cal.App.3d 647, 649 (*Ballard*).) The court therefore presumably applied Rangel's excess credits to wipe out any period of community supervision, which could not exceed three years. (§ 3455, subd. (e).)

It cannot be disputed that community supervision and parole serve precisely the same purpose—to facilitate the successful reintegration into society of those released from prison, while protecting the public by active supervision of the former inmate. (§§ 3000, subd. (a)(1) [parole], 3450, subd. (b)(5) [community supervision].) Indeed, the express purpose of the Act was simply to shift the responsibility for supervising certain released inmates to local jurisdictions. Mandated conditions for community supervision mirror those typically imposed on parolees, such as warrantless searches, waiver of extradition, and weapons and travel restrictions. (§ 3453, subd. (h).) Both programs of supervision are limited to three years for most offenders. (§§ 3000, subd. (b)(2)(A),

4

3455, subd. (e).) Former inmates under both programs may be returned to custody for violating the conditions of release. (§§ 3057, subd. (a), 3455, subd. (a)(1).) Several statutes, indeed, apply equally to both sets of offenders and treat them as equivalent. (E.g., § 3015, subd. (d) [authorizing participation in a "reentry court" program by both groups].)

The People's challenge to the trial court's failure to place Rangel under community supervision was based on the theory that such supervision is by statute mandatory, which is not disputed, to the extent that parole is also mandatory. The People also pointed out that section 2900.5, subdivision (a), as quoted above, does not include the term of community supervision as one which may be reduced by excess credits, although it does expressly include the period of parole.[5]

Defendant Rangel in this case casts the problem in terms of a violation of the equal protection clause. He asserts that he is similarly situated with those released from prison who are subject to parole, and that there is no rational basis for applying excess credits to a parole term but not a community supervision term. We agree.

To the extent that Rangel argues that the enactment of section 1170.126 created a new class of defendants/inmates in the "excess credits" situation—that is, "third strikers" who obtained resentencing after serving many years in prison but who would be subject to

---

[5] Section 2900.5 was amended in 2011 to include periods spent on home detention as credits, but was not amended to address the creation of the community supervision program.

postrelease community supervision rather than parole[6]—the proposed class is too narrow.[7] While it is probably true that the resentencing provisions of section 1170.126 will substantially increase the number of former inmates with excess credits, "third strikers" are *not* a distinct group from those who have gained credits through correction of errors, or who have simply served more presentence time than the length of the sentence they ultimately receive.[8] It is from this perspective that we analyze the equal protection argument:  are parolees and those subject to community supervision similarly

---

[6] Because only those "third strikers" whose most recent offense is relatively minor can seek resentencing, and such offenders are also subject to community supervision rather than parole.

[7] It is hard to disagree with the trial court's view that a period of supervision and assistance would be of benefit to real party in interest Rangel after his extended incarceration.  Arguably a provision denying the application of "excess credits" to a community supervision claim would be logical for inmates who had served lengthy terms before being resentenced.  However, section 2900.5 does not create subclasses of "excess credits" inmates subject to community supervision, and we do not decide whether such subclasses could properly be created by the Legislature.  We also note that not all inmates sentenced as third strikers and later resentenced will have served terms substantially longer than that to which they are resentenced; this depends on the timing of the conviction as well as the sentence eventually imposed.  Thus, a "bright line" might well be difficult to draw.

[8] Acting upon a hint from our Supreme Court, and with the concurrence of the Attorney General, this court recently vacated a defendant's conviction for the substantive gang felony described in section 186.22, subdivision (a).  The defendant had acted alone, and in *People v. Rodriguez* (2012) 55 Cal.4th 1125, the Supreme Court held that the statute could only be violated if the defendant acted in association with at least one other gang member.  Hence, the defendant's conduct did not constitute a crime and the conviction had to be vacated.  (See *People v. Mutch* (1971) 4 Cal.3d 389.)  Given the uncertainty prior to *Rodriguez*, a considerable number of defendants convicted of violating section 186.22, subdivision (a), may eventually wind up with "excess credits" after successfully attacking the conviction.

situated, and if so, may "excess credits" be applied to parole terms but not to the period to be served on community supervision?

We have pointed out above some of the obvious similarities between parole and community supervision both with respect to function and intent. The People summarize the bases for distinguishing between those subject to parole and those eligible for community supervision (primarily the type of conviction offense) and note some of the distinctions between the two programs, e.g., that parolees, but not those subject to community supervision, may be returned to prison.[9] These arguments are unpersuasive.

In our view all forms of postrelease supervision that subject inmates to substantially comparable restrictions, control, and potential re-incarceration are equivalent for analytical purposes and persons subject to the types of postrelease supervision discussed are similarly situated. The next question is whether the distinction for which the People argue may be lawfully drawn.[10]

---

[9] As noted above, the latter group may also be returned to custody, but in city or county facilities. Among the other distinctions cited is that while community supervision may be terminated early by the court (§ 3456, subd. (a)), "the court does not have the authority to terminate parole early." This is a specious argument; although courts cannot terminate parole early, a parolee's good behavior for a specified period triggers automatic early termination of parole unless the Board of Parole Hearings determines that parole should be continued. (See, e.g., § 3001, subd. (a)(1).) Thus, early termination is available to both groups.

[10] In *People v. Espinoza* (2014) 226 Cal.App.4th 635, Division Six of the Second District held that inmates subject to community supervision were not entitled to apply excess credits against that period. Although the discussion is in part framed in terms of "equal protection," the court's analysis focuses on the permissibility of distinguishing between inmates sentenced before the Act (and thus subject to parole) and those

*[footnote continued on next page]*

The Constitution[11] does not forbid uneven treatment of persons or groups. The essence of an equal protection claim is that two groups, similarly situated with respect to the law in question, are treated differently. (*Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 892.) While most classifications will be upheld if there is a "rational basis" for drawing distinctions, a law that interferes with a fundamental constitutional right or involves a suspect classification is subject to strict scrutiny and must be justified by a compelling state interest. (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.)

Numerous cases uphold the prospective application of statutes reducing the punishment for an offense by applying the "rational basis" test and finding prospective application of the law to be justified. In such cases the courts must uphold legislation if any reasonably conceivable set of facts could supply justification for the distinctions. (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) However, other cases apply the "strict scrutiny" test to laws that result in different periods of custody for those in the same time frame. (See cases collected in *People v. Cruz* (2012) 207 Cal.App.4th 664, 676-679;

---

*[footnote continued from previous page]*
sentenced thereafter (and thus subject to community supervision). We have no quarrel with the court's view that the ex post facto clause does not bar drawing such a distinction. Therefore, there is no need to express any view on the correctness of the result in *Espinoza*. The same is true for the decision in *People v. Tubbs* (2014) 230 Cal.App.4th 578, 584-586, which follows *Espinoza* without considering an equal protection claim.

[11] Fourteenth Amendment to the United States Constitution; Article I, section 7, subdivision (a) of the California Constitution.

8

cf. *People v. Turnage*, *supra*, at p. 74.)  In our view a distinction that frees one offender from postrelease supervision while imposing potentially onerous and invasive restrictions on the other does impact a fundamental right.  However, under *either* standard the distinction affected here cannot withstand examination.

Here the People attempt to justify the distinction by arguing that parole is "more onerous" than community supervision, focusing on the potential return to state prison and the possibility that parole may "far exceed three years."  But we have noted that persons subject to community supervision may also be returned to custody; and for the majority of parolees, the standard parole term is three years.  We have also noted that parole *may* be terminated early, contrary to the People's assertion.  Thus, the argument that the Legislature may have rationally considered that allowing parolees to apply their excess credits to the "more onerous" parole while refusing this remedy to those under community supervision does not hold water.  *Both* programs are currently designed to release inmates from formal supervision as soon as reasonably possible, depending on their behavior and consistent with public safety, and there is no statutory restriction on the conditions that may be imposed on those under community supervision—other than those which also apply to parole conditions.[12]  The policy considerations applicable to the two groups are identical and offer no basis for unequal treatment.

---

[12]  Section 3454, subdivision (a), allows the "supervising county agency" to impose conditions of supervision in addition to those required by section 3453, so long as these discretionary conditions are "reasonably related to the underlying offense . . . or to the offender's risk of recidivism, and the offender's criminal history."  This is generally

*[footnote continued on next page]*

Another consideration is that if there *were* a reason to distinguish between the two groups with respect to excess credits, the more logical distinction would be to afford a reduced or eliminated period of supervision to those released after relatively minor convictions. But compared to those subject to community supervision, parolees have in general suffered the *more* serious recent convictions, and therefore arguably are *more* in need of supervision. Yet under the People's approach, these parolees are entitled to apply excess credits to the parole term, while those subject to community supervision after less serious offenses are not.

The People's argument is also undercut by the fact that the benefits of section 1170.126 are not available to the most violent offenders[13] and inmates found by the court to "pose an unreasonable risk . . . to public safety" may not be resentenced. (§ 1170.126, subd. (f).) That is, resentencing (and thus community supervision) is reserved for inmates deemed minimal risks for violent recidivism. On the other hand, the only inmates currently subject to parole are serious or violent felons, those who have been

---

*[footnote continued from previous page]*
consistent with the requirement that conditions of parole are valid unless they relate to conduct not itself criminal, has no relationship to the crime of which the parolee was convicted, and requires or forbids conduct which is not reasonably related to future criminality. (See *People v. Lent* (1975) 15 Cal.3d 481, 486.)

[13] Pursuant to subdivision (e)(3) of section 1170.126 and its cross-reference to section 667, subdivision (e)(2)(C)(iv), inmates are ineligible if they have been convicted of violent sex offenses, specified child sex offenses, any homicide or solicitation to commit murder, assaults with a machine gun on a police officer or firefighter, possession of a weapon of mass destruction, or any other felony punishable by life imprisonment or death.

sentenced as "third strikers," high risk sex offenders, and mentally ill offenders. (§ 3451, subd. (b).)

To summarize, the most recent conviction or convictions of all inmates subject to community supervision are relatively minor, and inmates resentenced under section 1170.126 have never been convicted of egregiously violent offenses; they have further been currently found not to present undue risk to the public. By contrast, inmates subject to parole all fall into one or more categories of serious and obvious risk. Yet the latter can use excess credits to reduce or wipe out parole supervision, while under the People's approach inmates subject to community supervision cannot so use their excess credits. Even under the "rational basis" test, the distinction drawn by the People is simply unreasonable.[14]

When a court determines, as we do, that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies. It may either withdraw the benefits of a statute from the favored group, or extend the benefit to the excluded class, and may also invalidate a statute or expand its reach. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1207; *Burnham v. Public Employees' Retirement System* (2012) 208 Cal.App.4th 1576, 1588.) In this case the choice is relatively simple. In enacting subdivision (a) of section 2900.5, the Legislature clearly recognized that

---

**14** It may be suggested that inmates released to parole have the opportunity to participate in prerelease transitional programs not available to inmates such as petitioner whose release was not predictable so that parole might be less essential for their success after release. There is no evidence in the record to this effect.

persons who have served time in excess of that to which they were eventually sentenced should receive credit for that time against postrelease periods of restriction and control. We would extend that rule to those facing community supervision. Hence, real party in interest Rangel was not subject to such supervision.

DISPOSITION

The petition is denied.

CERTIFIED FOR PUBLICATION

McKINSTER_____<br>J.

We concur:


HOLLENHORST_____
          Acting P. J.


MILLER_____
          J.