Filed 10/13/17; Certified for Publication 11/8/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D070012, D070388 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250640) |
| SUSAN JOY AVIGNONE et al., | |
| Defendants and Appellants. | |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Reversed and remanded.


Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant Susan Joy Avignone.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant William Alan Avignone.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Susan Joy Avignone and William Alan Avignone (together the Avignones) defrauded five investors out of more than $700,000 in a real estate scheme. In exchange for dismissal of some of the charges, the Avignones pleaded guilty to three counts of fraud in connection with the offer, sale, and purchase of a security (Corp. Code, §§ 25401 & 25540, subd. (b); counts 2, 8, 10) and two counts of grand theft of personal property with a value of more than $950 (Pen. Code,[1] § 487, subd. (a); counts 3, 5).

Susan admitted a section 186.11, subdivision (a)(2) allegation attached to count 10, and a section 12022.6, subdivision (a)(1) allegation attached to count 5. William admitted a section 186.11, subdivision (a)(2) allegation attached to count 2, a section 12022.6, subdivision (a)(2) allegation attached to count 3, and a section 12022.6, subdivision (a)(1) allegation attached to count 5. At sentencing, the trial court struck the section 186.11 enhancements and denied probation. It sentenced the Avignones to an aggregate term of five years four months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.

---

[1] Undesignated statutory references are to the Penal Code.

The Avignones separately appealed, contending the trial court abused its discretion in denying probation.[2] William also contends (1) the electronic search condition was unreasonable and unconstitutionally overbroad, and (2) the trial court improperly calculated a restitution order as to one of the victims. The People concede the trial court improperly calculated the restitution for one of the victims. The People assert that the Avignones' sentences are unauthorized because the trial court did not have discretion to sentence them to county jail, rather than prison.

We reject the Avignones' argument that the trial court abused its discretion in denying probation. We agree that the trial court imposed an unauthorized sentence. This conclusion renders William's argument regarding the electronic search condition moot. We reverse the judgments and remand with directions to allow the Avignones an opportunity to withdraw their guilty pleas.

## GENERAL FACTUAL BACKGROUND

Because the parties are familiar with the facts, we summarize only the general facts concerning the underlying crimes at issue in this appeal. We present additional facts concerning the issues on appeal in our discussion *post*.

*Eric – Count 2*

Eric spoke to his pastor about his plan to borrow against the equity in his home to obtain funds he needed to start a new drywall business. The pastor referred Eric to Susan, his sister, for financial advice. Susan told Eric that she and her husband, William,

---

[2]     We granted Susan's unopposed motion to consolidate the appeals.

3

were financial planners doing business as SABA Investments (SABA).  In May 2006, Susan helped Eric refinance his home, with part of the funds used to purchase life insurance policies for Eric and his wife.

In April 2009, William contacted Eric by telephone to suggest borrowing against the life insurance policies to invest in real estate in Georgia to obtain a greater return than what the life insurance policies provided.  Eric sent a check to SABA for $27,000.  He received a promissory note indicating that he and his wife would receive quarterly payments for five years and a 50 percent share of the equity in the property when it was sold in five years.  The investment was to be secured by a first lien on the property.  The quarterly payments stopped in October 2010.  In January 2011, William told Eric that he did not have the money to pay him back.  Eric never received paperwork indicating the investment was used to purchase real property and never received any lien paperwork for property in Georgia.

*Otilia – Count 3*

Otilia met the Avignones through a friend and purchased a life insurance policy from them.  In 2009, Otilia met with the Avignones.  They suggested that she borrow against her life insurance policy and use the money to invest in real estate in Georgia.  They told her they would purchase a block of properties from the government, turn them around in three to five years, triple the money, and she would get half.  In June 2009, Otilia invested $70,000.  She received a promissory note for that amount and was promised quarterly payments of $2,100.  In February 2010, Otilia made a $245,000 investment with the Avignones.  At some point, she made another $38,760 investment.

4

Otilia initially received some payments, but in March 2011 all payments on her investments stopped. Otilia never received any paperwork showing that property had been purchased with her funds or paperwork showing that she was a first lien holder on any property.

*Monroe – Count 5*

After meeting William through a mutual friend, Monroe purchased a life insurance investment from William. In June 2009, William told Monroe that his company, SABA, used investor funds to purchase distressed properties in Georgia, fix them up, and rent them out. William promised Monroe that if he invested in the plan, Monroe would receive first lien status on the title of each property purchased. William promised quarterly payments on the investment and 50 percent of the profit when the properties were sold. Monroe invested a total of $150,000. Monroe initially received some payments, but the payments stopped. In July 2011, William told Monroe that the payments would resume soon, but Monroe never received any more payments.

*Carlos – Count 8*

Carlos met the Avignones through Otilia. In 2010, Carlos met with the Avignones and gave his $217,000 retirement sum to the Avignones. The Avignones used $200,000 to invest in property located in Georgia and returned the balance so Carlos could pay off creditors. In return, Carlos received a promissory note that guaranteed him $2,000 per month. He received several months of payments, but the payments were then cut in half and ultimately stopped. William never returned Carlos's telephone calls and Carlos discovered that the SABA office had been vacated.

*Frank – Count 10*

Frank met the Avignones at church and considered them his "best church friends." In early 2010, Frank sought financial advice from the Avignones as he was facing foreclosure of his home. In May 2010, Frank gave the Avignones $54,000 to invest in real estate in a southern state. In return, he received a promissory note for $54,000 and was promised quarterly interest payments. Frank received payments for about eight months when the payments stopped.

*Investigation*

Investigators found real estate in Georgia in the name of Susan and SABA. There were no liens in favor of any of the victims. SABA was registered to Susan and she signed most of the checks that depleted the victims' investment funds. Investigators traced the victims' investments to a SABA account, other accounts connected to the Avignones, or Susan's personal account. The Avignones used the investment funds for utilities, car payments, entertainment, and restaurants.

DISCUSSION

I. *PROBATION DENIAL*

A. *Background Facts*

The probation department prepared reports noting that the Avignones were presumptively ineligible for probation because they took funds exceeding $100,000 and finding that the case was not unusual so as to warrant probation. The probation reports recommended prison terms for William and Susan, respectively, of 11 and eight years. At sentencing the trial court indicated that it had read and considered the probation

6

reports, Susan's and William's statements in mitigation, the People's sentencing memorandums, and victims' statements.

William's defense counsel admitted that William used the funds for personal use, but argued that the scheme was "a legitimate effort" with a flawed execution. Counsel noted that the Avignones "lost everything." Counsel argued that William's offenses did not rise to the level of conduct requiring imprisonment and that a custodial sentence would negatively affect William's recent medical issues. Susan's defense counsel argued that Susan was less culpable because she did not personally make any promises to the victims. Counsel noted that the entire case turned on the Avignones' original intent, arguing that Susan did not intend to defraud the victims; rather, the plan "fell apart."

The trial court noted that it had given the case "significant thought" and, in reading all the documents, found that the Avignones "behaved in a highly narcissistic fashion. I think their conduct was self-centered." The trial court recognized it was possible that the Avignones did not initially intend to outright steal money from the investors, but that they decided to make risky investments because it was not their money. The court rejected the notion that the Avignones were "well-intended entrepreneurs." The court found the Avignones to be "opportunists" who continued to steal from the victims even when the investments started to fail.

The trial court noted that the Avignones had no significant records, were church-going people, had many fine qualities, and that the conduct of other people may have contributed to the victims' losses, but stated, "I don't think [that] goes very far in terms of mitigation." The court concluded that Susan and William were equally culpable, because

7

Susan "knew exactly what was going on. [William] did the talking [and Susan] brought the people in, at least on some of these occasions." The court ultimately found the Avignones eligible for probation, but denied probation, stating, "This is not a case for probation."

B. *Analysis*

The Avignones assert that the trial court abused its discretion in denying probation. Susan claims the trial court abused its discretion in denying probation based on its mistaken belief that she was equally culpable. William separately contends that the court's implicit finding that the case was not unusual under California Rules of Court,[3] rule 4.413 is mistaken and that the court failed to consider many of the unusual circumstances presented by the defense. They both contend that the record does not support the court's conclusion that they continued to bring in investors when it was clear to them the investment scheme was not going well. They also assert that the factors in support of probation outweighed the factors favoring the denial of probation.

Probation is an act of clemency, not a matter of right. (*People v. Wardlow* (1991) 227 Cal.App.3d 360, 365.) Under the determinate sentencing law, the trial court's decision to grant or deny probation is to be guided by criteria concerning the offense and the offender, such as those laid out in rule 4.414. (See § 1203, subd. (b)(1), (3).) These factors include the seriousness of this crime as compared to other instances of the same offense, the degree of defendant's culpability as an active or passive participant, the

---

[3] All rule references are to the California Rules of Court.

vulnerability of the victim, whether the defendant inflicted emotional or physical injury, the defendant's prior criminal record, and the defendant's remorse and willingness to comply with probation. (Rule 4.414(a) & (b).)

The trial court has broad discretion to grant or deny probation and we will not set aside a decision to deny probation absent a clear showing that the trial court abused its discretion. (*People v. Warner* (1978) 20 Cal.3d 678, 683, superseded by statute on another ground in *People v. Douglas* (1999) 20 Cal.4th 85, 92, fn. 6.) Discretion, as defined in the pertinent case law, is " 'controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . .' " (*People v. Bolton* (1979) 23 Cal.3d 208, 216.) A court abuses its discretion when its order " ' "exceeds the bounds of reason, all of the circumstances being considered." ' " (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.) The burden is on the defendant to clearly show that the denial of probation was irrational or arbitrary. (*Ibid*.)

Susan contends she did not actively participate in either setting up the investment plan or convincing the investors to invest in the plan. Accordingly, she claims the record does not support the trial court's conclusion that she was equally culpable. The People assert that Susan forfeited this claim by failing to object on the asserted ground below. Susan responds that any objection would have been futile because the position the trial court took on the factors in mitigation and aggravation was the opposite of the position defense counsel took in arguing for probation. We agree that any objection would have been futile as the record supports Susan's argument. Nonetheless, we find no abuse of discretion.

9

As a preliminary matter, Susan told the probation officer that "[w]e set up the business in good faith." This statement shows that Susan participated in setting up the business. Susan's interaction with each victim differed. Eric told an investigator that the Avignones visited his home in Arizona and both spoke to him and his wife about the investment and recommended that Eric and his wife refinance their home and invest in life insurance policies with them.

Frank and Otilia could not recall any specifics about their respective meetings with the Avignones, but each concluded that William did most of the talking. Frank believed that Susan "was an integral part of everything." Susan typed up the agreement and participated at the meeting. Otilia stated that Susan conducted some of the negotiations and she remembered "one session where . . . we were talking about a return on some monies and she berated, belittled [William] in front of me and I thought wow, and he just sat there and took it. So that sort of gave me a clue that she was behind it."

Carlos and Monroe indicated that William did the talking, but that Susan was present at the meetings. Monroe "normally" spoke to Susan about checks and when his payments stopped, he spoke with Susan who set up an appointment with William. William met with Monroe and told him that the money was "tied up in the courts or something like that."

While this evidence shows that William was primarily responsible for obtaining investors, it does not support a conclusion that Susan did not actively participate in the scheme. Rather, Susan attended and took part in meetings. SABA was registered in Susan's name and she signed most of the checks that depleted the victims' investment

10

funds. This evidence supports the trial court's conclusion that Susan was equally culpable with William for the failed investment scheme.

William contends the trial court failed to consider many of the unusual circumstances presented by the defense and thus mistakenly found the case was not unusual under rule 4.413. The record does not support this assertion.

The Penal Code sets forth certain classifications of offenders to whom probation may not be granted except in unusual circumstances where the interests of justice would best be served if the person is granted probation. (§§ 1203, subd. (e), 1203.045-1203.049.) As relevant here, probation shall not be granted to any person convicted of a crime of theft of an amount exceeding $100,000. (§ 1203.045, subd. (a).) Where a defendant comes under a statutory provision prohibiting probation except in unusual circumstances, the court applies the criteria in rule 4.413(c) to evaluate whether the statutory limitation on probation has been overcome. (*Id.*, subd. (b).) Rule 4.413(c) is divided into two subsections: (1) "Facts relating to basis for limitation on probation," and (2) "Facts limiting defendant's culpability." (Boldface omitted.)

Rule 4.413(c)(1) provides that the court may consider facts or circumstances indicating that the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, such as the crime being less serious than other cases involving the same probation limitation, the defendant has no recent record of committing similar crimes or crimes of violence, the current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time

11

before the current offense. Here, William committed serious offenses. He stole significant sums of money from multiple victims using his friendship and position of trust. As the trial court noted, "The monetary losses were significant. And the personal losses were even bigger. That is, the grief and the pain and the feeling of betrayal that one would get from trusting someone that you met at church with your life savings and then being at that age in one's life . . . ." William was also on formal probation since 2013 for forgery, passing a nonsufficient fund check, burglary, grand theft of personal property, and receiving stolen property in connection with passing a bad check at a bank.

Rule 4.413(c)(2) provides the court may consider facts or circumstances that did not amount to a defense but reduce "the defendant's culpability for the offense . . . ." It lists three possible circumstances. The first one concerns a defendant committing crimes "under circumstances of great provocation, coercion, or duress . . . ." (*Id.*, subd. (c)(2)(A).) This category does not apply as there is no evidence suggesting William committed the various offenses under any of these three scenarios. To the contrary, William committed the offenses over the course of years and used his friendship with the victims to commit the crimes and escape detection for as long as possible. The second category relates to crimes "committed because of a mental condition not amounting to a defense . . . ." (*Id.*, subd. (c)(2)(B).) There is no evidence showing this category applies.

In the third category a court may consider whether the "defendant is youthful or aged" and whether he or she "has no significant record of prior criminal offenses." (Rule 4.413(c)(2)(C).) Age 59 at the time of the sentencing hearing, William was not youthful or significantly aged. Additionally, while William does have a prior conviction, his

12

criminal record is not significant. William points out that he feels terrible for what happened, some of the invested funds were spent on real property in Georgia, and the victims did receive some of the promised payments. William included these facts in his statement of mitigation. The record shows the trial court appropriately exercised its discretion after reviewing all submitted materials, listening to argument, and giving the matter "significant thought." On balance, William has presented no persuasive argument showing the trial court was required to find this was an unusual case overcoming the statutory prohibition on probation.

The Avignones both contend that the record does not support the court's conclusion that they continued to bring in investors when it was clear to them the investment scheme was not going well. The People respond that the Avignones forfeited this claim by failing to object on this ground below. For purposes of analysis, we assume that the issue is not forfeited and address the merits because the evidence supports the trial court's conclusion.

Eric and his wife invested $27,000 in April 2009, until payments slowed and then stopped in May 2010. During the time when the Avignones' payments to Eric and his wife had slowed, they convinced Carlos to invest $200,000 (January 2010) and Otilia to invest an additional $245,000 (February 2010). During the time when the Avignones had stopped making payments to Eric and his wife, Frank invested $54,000 (May 2010) and $20,000 (April 2011). These facts amply support the trial court's finding that the Avignones continued to bring in new investors even after they knew their investment plan was beginning to fail.

13

Finally, the Avignones assert that the factors in support of probation outweighed the factors favoring the denial of probation. The Avignones, however, were presumptively ineligible for probation under section 1203.045, subdivision (a). As discussed *ante*, the trial court did not abuse its discretion in finding the case was not unusual. It is only after a trial court resolves the first test in favor of eligibility that it must determine whether probation is appropriate under the circumstances. (See rules 4.413(b), 4.414; *People v. Superior Court* (*Du*), *supra*, 5 Cal.App.4th at p. 830.)

First, it is clear from the court's comments that it considered the factors listed in rule 4.414 (as set forth in the probation reports) and did not find the case warranted a grant of probation whether the Avignones were eligible or not. In any event, the Avignones fail to convince us the trial court acted irrationally in denying probation.

## II. *UNAUTHORIZED SENTENCE*

### A. *Background Facts*

The information alleged white collar crime sentencing enhancements under section 186.11, subdivision (a)(2) and (3) against the Avignones. It further alleged that the Avignones were subject to mandatory state prison incarceration under section 1170, subdivisions (f) and (h)(3). At the start of the change of plea hearing, the trial court stated it had discussed its indicated sentence with counsel during "a series of unreported

14

chambers conferences" and when they met today, the court had given "an indicated sentence . . . if there were a plea to the sheet."[4]  The trial court informed the Avignones:

" . . . I will not impose a sentence of more than six years of imprisonment if I impose a term of imprisonment.

"*Under these counts and allegations as you are admitting them*, any term of imprisonment that would be imposed would normally have to be served in the California Department of Corrections and Rehabilitation, as opposed to the local San Diego County Jail.

"I have told all counsel and I will tell you folks that I believe that I have the authority to strike the punishment on the allegation that require[s] this term of imprisonment to be served in the state prison.

"If I do that, that means that any term of imprisonment that I do impose would be served in the custody of the San Diego County Sheriff, rather than in the Department of Corrections and Rehabilitation.

"This is I think regarded by most people who are defendants as a material benefit, because it means that any term of imprisonment that does get imposed will be served here locally, rather than going into the state prison."  (Italics added.)

The court then stated that if it gave "a term of imprisonment, [it would] not send [them] to the Department of Corrections and Rehabilitation.  Any sentence would be served in the custody of the San Diego County Sheriff."  The court summarized as follows:  "The bottom line is, folks, we're going to have a sentencing hearing and your sentence could be anywhere between probation, local time anywhere between zero and one year up to a term of imprisonment for six years, which could at first be [a] straight six-year term of local imprisonment or it could be a term where I split it and order a

---

4    A " 'plea[] to the sheet' " represents a plea made "in the hope that the court will show leniency," rather than "for a consideration which would support a contract." (*People v. Marsh* (1984) 36 Cal.3d 134, 140.)

15

certain amount of time to be served in custody and a certain amount of time to be served under supervision."

Thereafter, the Avignones did not plea to the sheet. Rather, William admitted to counts 2, 3, 5, 8, and 10 and the section 186.11, subdivision (a)(2) allegation (the white collar enhancement) attached to count 2. Susan admitted to the same counts and the same allegation attached to count 10. The plea agreement stated that the balance of the charges would be dismissed. At the sentencing hearing, the trial court struck the white collar enhancements. It then sentenced the Avignones to an aggregate term of five years four months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.

B. *Analysis*

"A split sentence is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department. Such sentences are imposed pursuant to . . . section 1170, subdivision (h)(5)(B)(i), a provision originally adopted as part of the '2011 Realignment Legislation addressing public safety.' (Criminal Justice Realignment Act of 2011 (Realignment Act), operative Oct. 1, 2011, as added by Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1.)" (*People v. Camp* (2015) 233 Cal.App.4th 461, 464, fn. 1.) " 'Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison. [Citation.] Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a

16

hybrid or split sentence consisting of county jail followed by a period of mandatory supervision.' " (*Id.* at p. 467.)

The People assert that the trial court imposed an unauthorized sentence as it lacked discretion to strike the white collar enhancements under section 1385, and thus could not impose a split sentence. Susan concedes the error, while William argues that, based on the language of the relevant statutes, because the court dismissed the punishment on the white collar enhancements, its imposition of a local prison sentence was duly authorized by the Penal Code. The Avignones both argue that, if we find the sentence to be unauthorized, they should be allowed to withdraw their guilty pleas.

Section 1385, subdivision (a) provides in part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Section 1385 may be used to dismiss individual counts in accusatory pleadings, sentencing enhancements, allegations that the defendant has suffered a prior conviction, and allegations that the defendant has suffered a prior " 'strike' " within the meaning of the "Three Strikes" Law. (*In re Varnell* (2003) 30 Cal.4th 1132, 1134.) Section 1385, subdivision (c)(1) authorizes the trial court to strike or dismiss an enhancement, or to instead strike the additional punishment for that enhancement in the furtherance of justice.

Nonetheless, "[t]he judicial authority to dismiss a criminal action or allegation in furtherance of justice is statutory and may be withdrawn by the Legislature. [Citation.] A court may exercise such authority unless, in a given context, the Legislature has clearly evidenced a contrary intent. [Citations.] Courts will not interpret another statute as

17

eliminating the power to dismiss under section 1385 unless there is clear legislative direction to that effect. [Citation.] But the Legislature can provide such clear direction without expressly referring to section 1385." (*People v. Chavez* (2016) 5 Cal.App.5th 110, 117.)

The Realignment Act changed the definition of a felony to an offense punishable by death, imprisonment in state prison, or by " 'imprisonment in a county jail under the provisions of subdivision (h) of Section 1170.' " (*People v. Lynch* (2012) 209 Cal.App.4th 353, 357 (*Lynch*), citing § 17, subd. (a).) A defendant sentenced under the Realignment Act is generally committed to county jail instead of state prison. (*People v. Griffis* (2013) 212 Cal.App.4th 956, 961.) Section 1170, subdivision (h) provides:

> "(1) *Except as provided in paragraph (3)*, a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years.
>
> "(2) *Except as provided in paragraph (3)*, a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense.
>
> "(3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a serious felony described in subdivision (c) of Section 1192.7 or a prior or current conviction for a violent felony described in subdivision (c) of Section 667.5, (B) has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of Section 1192.7 or a violent felony described in subdivision (c) of Section 667.5, (C) is required to register as a sex offender pursuant to Chapter 5.5 (commencing with Section 290) of Title 9 of Part 1, or (D) *is convicted of a crime and as part of the sentence an enhancement pursuant to Section 186.11 is imposed, an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison*." (Italics added, boldface omitted.)

18

Subdivision (f) of section 1170 provides:

> "Notwithstanding any other provision of this section, for purposes of paragraph (3) of subdivision (h), *any allegation that a defendant is eligible for state prison* due to a prior or current conviction, *sentence enhancement*, or because he or she is required to register as a sex offender *shall not be subject to dismissal pursuant to Section 1385*." (Italics added, boldface omitted.)

The white collar enhancements that the Avignones admitted require an additional term of punishment of two, three, or five years "in the state prison" for a pattern of related felony conduct involving the taking of, or resulting in the loss of more than $500,000. (§ 186.11, subd. (a)(2).) "The additional prison term provided in paragraph (2) of subdivision (a) shall be in addition to any other punishment provided by law, including Section 12022.6, *and shall not be limited by any other provision of law*." (*Id.*, subd. (b)(2), italics added.)

Section 1170, subdivision (h) makes suffering a white collar enhancement a disqualifying factor for sentencing to county jail under that statute. (*People v. Sheehy* (2014) 225 Cal.App.4th 445, 450 [section 1170 requires that a prison sentence be imposed if a defendant, among other things, has sustained a section 186.11 aggravated white collar crime enhancement]; *Lynch*, *supra*, 209 Cal.App.4th at p. 357 [same].) Section 1170, subdivision (f) provides that the trial court's striking of the white collar enhancement was unauthorized. Read together, the plain language of section 186.11 and subdivisions (f) and (h)(3) of section 1170 provide that the trial court lacked the authority to strike the white collar enhancements and that any sentence imposed on the

19

enhancements must be served in state prison, not local custody. Accordingly, the trial court's split sentence was unauthorized.

William seeks to avoid this result arguing that "the Legislature did not mean to send every defendant who admits a section 186.11 enhancement to state prison" claiming this interpretation renders the language provided in section 1170, subdivision (h)(3) meaningless. We disagree. As we indicated, subdivisions (f) and (h)(3) of section 1170 must be read together. Subdivision (f) of section 1170 provides that the trial court lacked the authority to strike the white collar enhancement allegations. Subdivision (h)(3) of section 1170 in turn provides that any sentence imposed on the white collar enhancement allegations must be served in state prison.

The Avignones argue in their reply briefs that, if we conclude that they received unauthorized sentences, they should be allowed the opportunity to withdraw their pleas. We invited the Attorney General to file a supplemental letter brief addressing this issue. The People responded, noting that the Avignones did not plead guilty in exchange for a specific sentence. Rather, the trial court gave an indicated sentence which contained an unauthorized sentencing choice. The People argue that the Avignones should not be allowed to withdraw their guilty pleas because they can properly be sentenced to a prison term of no less than six years in accordance with the court's indicated sentence. Thus, the proper remedy is to remand the matter for the trial court to impose a lawful sentence in accordance with the indicated sentence. Alternatively, the People assert we should remand the matter with leave for the Avignones to file a motion to withdraw their pleas

20

whereby the trial court may determine whether the pleas were based on their belief that they would serve any time in jail rather than prison.

An indicated sentence may be part of a plea agreement with the district attorney (see, e.g., *People v. Buttram* (2003) 30 Cal.4th 773, 777, fn. 2) or may be stated by the court without the prosecutor's agreement (*People v. Superior Court* (*Ramos*) (1991) 235 Cal.App.3d 1261, 1271). In the latter circumstance, the trial court informs a defendant "what sentence he [or she] will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." (*People v. Superior Court* (*Smith*) (1978) 82 Cal.App.3d 909, 915-916.) An indicated sentence falls "within the boundaries of the court's inherent sentencing powers and, in contrast to plea bargains, prosecutorial consent is not required." (*Ramos*, at p. 1271.)

The trial court here did not expressly state that its "indicated sentence represent[ed] the court's best judgment as to the appropriate punishment for [these] defendant[s] and [these] offense[s], regardless of whether guilt is established by plea or at trial." (*People v. Clancey* (2013) 56 Cal.4th 562, 576 (*Clancey*).) Accordingly, the record is ambiguous as to whether the trial court gave a proper indicated sentence or engaged in unlawful judicial plea bargaining by offering the Avignones more lenient treatment or another inducement to enter a guilty plea. (*Id.* at p. 575.) In *Clancey*, our high court concluded that a conditional reversal was the appropriate remedy to resolve the ambiguity. (*Id.* at p. 578.)

As we discussed, the trial court lacked the authority to impose its indicated sentence. Additionally, the record suggests that the trial court may have engaged in

21

improper judicial plea bargaining as it expressly stated that its "indicated sentence would be appropriate if there were pleas and acceptance of responsibility. [¶] I've discussed with all counsel the fact that the court makes—places considerable emphasis on acceptance of responsibility when it comes down to a sentencing decision. [¶] Of course each client, each defendant, has a complete right to go to a jury trial. And if they were successful, then of course acceptance of responsibility is not an issue because they would have been found not guilty. [¶] On the other hand, as I've explained to counsel, if they were not successful and the trial did not go the way the defense would like it to go, then their exposure is considerable, and that is made—if not worse, there's certainly no benefit for acceptance of responsibility if this comes after a trial." A proper indicated sentence does not occur where "the court extended leniency to defendant because of his plea." (*Clancey*, *supra*, 56 Cal.4th at p. 578.)

Under these circumstances, the Avignones must be allowed the opportunity to withdraw their pleas and admissions. (See *In re Williams* (2000) 83 Cal.App.4th 936, 944-945 [where agreed-upon sentence exceeds court's jurisdiction, the court lacks power to effectuate the bargain, and defendant's remedy is to withdraw the plea].) If the Avignones withdraw their pleas, all original charges and allegations will be reinstated.

### III. *ELECTRONIC SEARCH CONDITION*

The Avignones contend that the mandatory supervision condition requiring them to submit to a Fourth Amendment search of their computers and recordable media is unreasonable under *People v. Lent* (1975) 15 Ca1.3d 481, and unconstitutionally overbroad. This argument has been rendered moot by our determination that the

22

Avignones received an unauthorized sentence and are thus ineligible for mandatory supervision. (*Ante*, pt. II.)

## IV. *RESTITUTION TO OTILIA*

At the restitution hearing, the trial court determined that the losses of each victim should be calculated by subtracting the amount of money each victim received in quarterly principal and interest payments from the total amount of their investment. As to Otilia, the parties agreed that she invested a total of $355,000 with the Avignones. It was undisputed that Otilia received six principal and interest payments of $8,400 ($50,400) plus nine payments of $2,100 dollars ($18,900), for a total of $69,300. The parties also agreed that the Avignones transferred a number of properties to Otilia with a stipulated value of $203,500. Using the trial court's formula, Otilia was entitled to restitution as follows: $355,000 – ($69,300 + $203,500) = $82,200.

At the restitution hearing the parties and the trial court erroneously concluded that Otilia had received principal and interest payments totaling $63,026. The court then made a math error to conclude that Otilia was not owed any restitution. The parties brought the math error to the court's attention and it recalculated the restitution owed to Otilia as follows: $355,000 – ($63,026 + $203,500) = $89,474. The parties agree, and we concur, that the trial court's finding that Otilia was paid back $63,026 is not factually supported by the record and that the correct amount is $69,300.

This argument is not moot in light of our reversal of the judgments as the Avignones may decide to not withdraw their guilty pleas. Should the Avignones decide to not withdraw their guilty pleas, the judgments shall be reinstated and the restitution

23

order must be modified to reflect that Otilia is entitled to a restitution award in the amount of $82,200.

## DISPOSITION

For the reasons stated *ante*, the judgments are reversed and the case remanded so that defendants may decide whether to withdraw their guilty pleas.  If defendants withdraw their pleas, all original charges and enhancements shall be reinstated and trial or other appropriate disposition shall proceed.

If defendants choose to not withdraw their pleas, then the judgments shall be reinstated and defendants resentenced.  The restitution order must be modified to reflect that Otilia is entitled to a restitution award in the amount of $82,200.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

24

Filed 11/8/17

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D070012 |
| Plaintiff and Appellant, | (Super. Ct. No. SCD250640) |
| v. | |
| SUSAN JOY AVIGNONE et al., | |
| Defendants and Appellants. | NO CHANGE IN JUDGMENT |
| THE PEOPLE, | D070388 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD250640) |
| v. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| SUSAN JOY AVIGNONE, | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 13, 2017, be modified as follows:

1.  Beginning on page 2, the four introductory paragraphs located between the counsel listing and the General Factual Background on page 3 are deleted, along with footnotes 1 and 2, and the following inserted in their place:

---

\*      Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, III, and IV.

Susan Joy Avignone and William Alan Avignone (together the Avignones) defrauded five investors out of more than $700,000 in a real estate scheme. In exchange for dismissal of some of the charges, the Avignones pleaded guilty to three counts of fraud in connection with the offer, sale, and purchase of a security (Corp. Code, §§ 25401 & 25540, subd. (b); counts 2, 8, 10) and two counts of grand theft of personal property with a value of more than $950 (Pen. Code, § 487, subd. (a); counts 3, 5). Susan admitted a section 186.11, subdivision (a)(2) allegation attached to count 10 and a section 12022.6, subdivision (a)(1) allegation attached to count 5. William admitted a section 186.11, subdivision (a)(2) allegation attached to count 2, a section 12022.6, subdivision (a)(2) allegation attached to count 3, and a section 12022.6, subdivision (a)(1) allegation attached to count 5. At sentencing, the trial court struck the section 186.11 enhancements and denied probation. It sentenced the Avignones to an aggregate term of five years four months to be served in the custody of the sheriff. The court imposed a split sentence, ordering that one year four months of the imposed sentence would be served in the community under mandatory supervision.

The Avignones separately appealed, contending the trial court abused its discretion in denying probation. William also contends (1) the electronic search condition was unreasonable and unconstitutionally overbroad, and (2) the trial court improperly calculated a restitution order as to one of the victims. The People assert that the Avignones' sentences are unauthorized because the trial court did not have discretion to sentence them to county jail, rather than prison.

In the published portion of this opinion, we agree that the trial court imposed an unauthorized sentence because a white collar crime enhancement is a disqualifying factor under the Criminal Justice Realignment Act of 2011 (operative Oct. 1, 2011, as added by Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1). Accordingly, the trial court imposed an unauthorized sentence as it lacked discretion to strike the white collar enhancements under section 1385, and thus could not impose a split sentence.

2

In the unpublished portion of this opinion, we reject the Avignones' argument that the trial court abused its discretion in denying probation. The People concede that the trial court improperly calculated the restitution for one of the victims. Finally, William's argument regarding the electronic search condition is moot based on our conclusion that he received an unauthorized sentence. We reverse the judgments and remand with directions to allow the Avignones an opportunity to withdraw their guilty pleas.

2. On line 7 of the first new paragraph following the parenthetical reference to "(Pen. Code,)" insert a new footnote 1 to read:

Undesignated statutory references are to the Penal Code.

3. Following the first sentence, ending "in denying probation," of the second new paragraph, insert a new footnote 2 to read:

We granted Susan's unopposed motion to consolidate the appeals.

There is no change in the judgment.

The opinion in the above-entitled matter filed October 13, 2017, was not certified for publication. It appearing the opinion meets the standards for partial publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for partial publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for partial publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in part in the Official Reports.

McCONNELL, P. J.

Copies to: All parties

3